UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) No. 5:22-MJ-5132-MAS |
| v. | ) |
| | ) |
| JANARD WESLEY-HUGHES, | ) |
| Defendant. | ) |

**DETENTION OPINION AND ORDER**

This case presents a challenging question for the Court: should a defendant with almost no criminal history, who is charged with a drug crime, be detained pretrial where the facts of the case suggest he was connected to more than a dozen (uncharged) overdose deaths? The Court finds that though this is a close call, case law and the Bail Reform Act mandate detention in this circumstance.

**I.      RELEVANT FACTUAL, PROCEDRUAL, AND LEGAL BACKGROUND**

A Complaint charges defendant Janard Wesley-Hughes ("Wesley-Hughes") with one count of distribution of 10 grams of fluorofentanyl. [DE 1]. The affidavit in support of the Complaint alleges Wesley-Hughes sold a confidential informant more than 10 grams of lab-confirmed fluorofentanyl on March 17, 2022, during a recorded controlled purchase. At the initial appearance on April 14, 2022, the United States moved for detention pursuant to 18 U.S.C. § 3142(f)(1)(C), arguing Wesley-Hughes presented a flight and danger risk. [DE 6]. Wesley-Hughes requested a joint preliminary hearing and detention hearing, which the Court conducted on April 20, 2022. [DE 7]. At that hearing, the Court heard testimony and argument related to probable cause, and then determined there was probable cause to believe Wesley-Hughes

committed the offenses alleged in the Complaint. [DE 7]. The Court then moved on to the issue of pretrial detention. Because the Court found probable cause, the presumption of detention attached to the detention question pursuant to 18 U.S.C. § 3142(e)(3)(A).

The BRA and *United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010), frame the resulting inquiry. The presumption imposes on the defendant a threshold "burden of production"; in response, "he must introduce at least some evidence" that he poses neither a flight nor a danger risk. *Stone*, 608 F.3d at 945; *see also United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (imposing a responsive burden on the defendant to produce "some evidence that he will not flee or endanger the community if released"); *United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (requiring the defendant to "produc[e] probative, credible evidence to rebut the presumption and support his contention that he will appear . . . and [that] he does not pose a danger"). The production burden "is not heavy," and the Government retains the ultimate burden of persuasion. *Stone*, 608 F.3d at 945. An unrebutted presumption requires detention. A rebutted presumption remains a pro-detention statutory factor. *See id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

Where a defendant rebuts the presumption, the burden shifts back to the United States. Detention premised on nonappearance requires preponderant evidence of flight risk. *See, e.g.*, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006). Danger-based detention, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure community safety. 18 U.S.C. § 3142(f). The analyses are distinct. Conditions that sufficiently target nonappearance risk may not adequately address danger potential. *See*

*United States v. Mercedes*, 254 F.3d 433, 436-37 (2nd Cir. 2001). Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance."); *id.* at 1093 n.13 (observing that, barring a "replica detention facilit[y]," the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f). The key is simply evidentiary reliability and accuracy. *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998). Given hearing informality, the Court properly considers a wide range of proof. The nature and quality of proof, though, impacts its probative value and weight in the detention calculus. The § 3142(g) factors ultimately drive the overarching analysis.[1]

---

[1] The subsection directs the Court to balance the following:

    (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
(2) the weight of the evidence against the person;
(3) the history and characteristics of the person, including--
    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
    (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release

## II.    ANALYSIS

As a threshold matter, the Court finds that Wesley-Hughes has produce enough evidence to rebut the presumption as to both flight and danger. The Court finds that the United States failed to prove by a preponderance of the evidence that no conditions will assure Wesley-Hughes' appearance at future court hearings and but succeeded in proving by clear and convincing evidence that Wesley-Hughes poses a risk of danger to the community that no conditions of release will adequately mitigate.

At the hearing, the United States supplemented the information in the Complaint with the testimony of DEA Task Force Officer Keith Parke. Specifically, TFO Parke testified that Wesley-Hughes was the subject of a narcotics investigation that resulted in four controlled purchases of fluorofentanyl in Richmond, Kentucky, from Wesley-Hughes over approximately one months' time. TFO Parke identified that fluorofentanyl, an analog of fentanyl, was a unique drug never seen in Richmond, Kentucky before this investigation. While investigating Wesley-Hughes, TFO Parke learned that Richmond, Kentucky had suffered between twelve to fifteen overdose death attributable to flourofentanyl in the prior few weeks per the local coroner. TFO Park testified that when investigating one of those overdose deaths, law enforcement discovered text messages between the decedent and Wesley-Hughes that could be interpreted as related to a drug transaction close in time to the overdose. TFO Parke acknowledged, however, that there was no fluorofentanyl found in that victim's bloodstream. TFO Parke further acknowledged that law enforcement has

---

described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

not been able to connect any overdose to Wesley-Hughes, other than through speculation and circumstantial evidence.

Moreover, the evidence before the Court indicated Wesley-Hughes was aware both of the ongoing investigation and overdose. Specifically, at some point in February or March, Wesley-Hughes suspected he was being followed between Lexington and Detroit. Law enforcement also confirmed with an unidentified contact that Wesley-Hughes was informed that he was the potential cause of an overdose death on March 17, 2022. Despite this knowledge, Wesley-Hughes returned to Richmond, Kentucky where he was arrested on March 31, 2022, through another controlled buy.

A.      **RISK OF FLIGHT**

As noted, Wesley-Hughes overcame the presumption as to flight and/or nonappearance risk. Wesley-Hughes relied heavily on the Pretrial Services Report, which reflects that he has no criminal record, does not use controlled substances, has been working as a local truck driver for three years and was employed as a bailiff prior to his current position. [Pretrial Services Report at 2]. Wesley-Hughes is a lifetime resident of Detroit, Michigan, where he lives with his partner of more than twenty years. If released, Wesley-Hughes would return to this residence and his employment as a local truck driver. He does not possess a passport and has never traveled outside the United States. These facts were sufficient to overcome the presumption burden as to flight and nonappearance.

The United States conceded that Wesley-Hughes does not pose a risk of flight; however, the United States maintained that Wesley-Hughes poses a risk of nonappearance because he has no connections to this district. The United States argued that if released to the Eastern District of Michigan, it could be difficult for this Court to find and apprehend Wesley-Hughes if he did not appear for Court in the Eastern District of Kentucky. Although that is a concern to the Court, it is

possible for the Court to craft conditions, such as electronic monitoring and home detention, that would mitigate any risk of nonappearance. The Court finds that Wesley-Hughes' residence in Detroit, devoid of any additional facts to support the United States' argument that he is a risk of nonappearance, is insufficient to find that he is.

**B.    RISK OF DANGER**

The Court finds that Wesley-Hughes' presentation of proffer, primarily through the Pretrial Services Report, rebutted the presumption as to his dangerousness due to his stable background and lack of criminal history, violence, or substance use. Nonetheless, the Court finds that conditions would not address the danger of continued trafficking activity and that the United States has shown by clear and convincing evidence that danger-based detention is required.

**1.    Nature and Circumstances of the Offense**

The first BRA factor is the "nature and circumstances of the offense charged, including whether the offense . . . involves a . . . controlled substance[.]" 18 U.S.C. § 3142(g)(1). The nature of the offense—a presumption drug trafficking case—favors Wesley-Hughes' detention.

The BRA manifestly signals Congressional belief in the inherent, exceptional dangerousness of drug offenses. The detention presumption stemming from them "does not vanish simply because a defendant comes forward with evidence to rebut it. Were the presumption to vanish, 'courts would be giving too little deference to Congress' findings regarding this class [of crimes].'" *United States v. Lattner*, 23 F. App'x 363, 364 (6th Cir. 2001) (quoting *United States v. Martir*, F.2d 1141, 1144 (2d. Cir. 1986)). The presumption persists as a pro-detention concern.

Distribution of fentanyl and its analogues is an exceptionally dangerous offense. The testimony of TFO Parke emphasized the danger to the community of the specific allegations herein, through the suggestion Wesley-Hughes' trafficking on March 17, 2022, may have led to

an overdose death. There can be no doubt (as even Wesley-Hughes acknowledged) that this factor weighs in favor of detention.

      2.    **<u>Weight of the Dangerousness Evidence</u>**

The next consideration gauges "the weight of the evidence against the person." 18 U.S.C. § 3142(g)(2). "This factor goes to the weight of evidence of dangerousness, not the weight of the evidence of defendant's guilt." *Stone*, 608 F.3d at 948. The Court engages no elemental assessment of the alleged offenses and makes no "pretrial determination of guilt[.]" *Id.* (quoting *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991)).

The Court does, however, examine the intersection of the factors in § 3142(g)(1) and (g)(3). As explained below, the third factor, which considers Wesley-Hughes' history and characteristics, is devoid of anything that could trouble the Court. Thus, the Court can only look to the circumstances surrounding the instant allegations to determine the weight of Wesley-Hughes' dangerousness. As discussed above, dealing in fluorofentanyl is inherently dangerous. Perhaps most concerningly here is TFO Parke's testimony that Wesley-Hughes learned of an overdose death possibly connected to narcotics he sold, and he was found in Richmond two weeks later with what appeared to be the same type of narcotics. This conduct indicates Wesley-Hughes had little regard for the consequences of his drug trafficking, even where those consequences were death.[2] This fact, balanced against Wesley-Hughes' spotless criminal history, lands this factor slightly in favor of detention. *See United States v. Holden*, 2017 WL 1362684, at *2 (E.D. Ky. Apr. 12, 2017) (mentioning that the dangers associated with drug trafficking "leading to near fatal overdoses cannot be overstated").

---

[2] The Court acknowledges the testimony on this point was weak hearsay and gives it corresponding weight. Nonetheless, the circumstantial evidence in this case suggests Wesley-Hughes sold narcotics to an overdose victim, and then returned to Kentucky two weeks later to conduct another narcotics transaction.

3. **History and Characteristics**

The third BRA factor considers the history and characteristics of the person. *See* 18 U.S.C. § 3142(g)(3)(directing courts to consider "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" and whether, at the time of the current offense the person was on probation or pretrial release).

Current allegations excepted, there is nothing in Wesley-Hughes' history that raises concern for the Court. By all accounts Wesley-Hughes has had a stable residence, family/relationship structure, employment, and mental and physical health for his entire adult life. [Pretrial Services Report at 1-3]. He does not have any criminal history, not even a traffic ticket. There is no evidence he has ever uses illicit substances, and he denied the same. This factor weighs firmly in favor of release.

4. **Nature and Seriousness of the Danger Risk**

The fourth and final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). The nature of the potential danger associated with the continuance of fluorofentanyl trafficking is grave. *See, e.g., United States v. Flowers*, No. 3:05-CR-72, 2005 WL 1981364, at *4 (E.D. Tenn. Aug. 17, 2005) (observing that the "sale of drugs [ ] establish[es] a significant danger"). In a similar heroin and fentanyl trafficking case in the District of Maryland, the Court there noted that there was some connection between the drug trafficking organization and overdose deaths in the community, and that the members of that trafficking operation were away of local overdose deaths. The Court held that "[a]lthough no specific deaths have been traced to Defendant's past drug customers, and the impact on his intended future customers can never be known, there is no doubt that Defendant's

product is a very dangerous one." *United States v. Cannon*, 2020 WL 1820087, at *2 (D .Md. April 10, 2020). The same logic applies here. The evidence presented was insufficient for the Court to conclude that the narcotics Wesley-Hughes placed in the stream of commerce in Richmond caused any overdose deaths; however, the evidence was sufficient to raise the specter that they did.

In addition, the Court finds there are no conditions that can protect the community from the risks posed by Wesley-Hughes' release. The United States presented testimony and proffer that Wesley-Hughes suspected or knew that (1) law enforcement was investigating him for drug trafficking, and (2) one of his buyers suffered an overdose death. Despite this knowledge, Wesley-Hughes allegedly continued his narcotics trafficking. This suggests Wesley-Hughes would not be easily deterred from continuing his alleged criminal conduct if released on bond. "[T]he danger-to-the-community factor is not simply about physical violence; the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community[.]" *United States v. Pina-Aboite*, 97 F. App'x 832, 836 (10th Cir. 2004). Further, the Court finds that there are no conditions that would adequately mitigate the grave risk to the community (whether in Michigan or Kentucky) of continued fluorofentanyl sales. Even one transaction involving this drug could cause irreparable harm. Based on Wesley-Hughes' willingness to maintain his alleged trafficking in the face of law enforcement investigation and his customer's death, the Court has no confidence any conditions it could impose would protect the community from the risk of continued fluorofentanyl trafficking.

### III. CONCLUSION

For the stated reasons, the Court finds that the United States did not prove Wesley-Hughes is an irremediable flight/nonappearance risk based on facts supported by preponderance of the evidence but did prove by clear and convincing evidence that he poses a risk of danger to the

community that cannot be mitigated with conditions.  Therefore, the Bail Reform Act mandates detention. The Court has assessed the record, the testimony at the hearing, contemplated the risks, evaluated conditions, and determined that there exist no conditions that will reasonably assure that the safety of others or the community if Wesley-Hughes is released.  Accordingly, the Court **GRANTS** the United States' oral motion for detention and **DETAINS** Defendant Wesley-Hughes.

The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Entered this the 26th day of April, 2022.



Signed By:
Matthew A. Stinnett    MAS
United States Magistrate Judge